U.S. ATTORNEY'S COPY

EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Narcotics Section

MARK A. INCIONG CA BAR #163443
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii 96850
Telephone: 541-2850

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 30 2005

at 10 o'clock and 30 min. A M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ERIC K. HO, (02)<br>a/k/a Erick Ho,<br><br>Defendant. | ) | CR. NO. 05-00027 JMS<br><br>MEMORANDUM OF PLEA AGREEMENT<br><br>Date: September 30, 2005<br>Time: 10:00 a.m.<br>Judge: Honorable J. Michael Seabright |

MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the UNITED STATES OF AMERICA, by its attorney, the United States Attorney for the District of Hawaii, and the Defendant, ERIC K. HO, a/k/a Erick Ho, and his attorney, Craig Kimsel, Esq., have agreed upon the following:

1. Defendant acknowledges that he has been charged in Count 1 of the First Superseding Indictment with violating Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(A).

EXHIBIT B

2. Defendant has read the charges against him contained in the First Superseding Indictment, and those charges have been fully explained to him by his attorney.

3. Defendant fully understands the nature and elements of the crimes with which he has been charged.

4. Defendant will enter a voluntary plea of guilty to Count 1 of the First Superseding Indictment charging him with conspiracy to distribute 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers.

5. Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6. Defendant enters this plea because he is, in fact, guilty of conspiring to distribute 50 grams or more of methamphetamine as charged in Count 1 of the First Superseding Indictment, and agrees that his plea is voluntary and not the result of force or threats. Further, Defendant understands that he has been charged with an offense that requires the Government to prove beyond a reasonable doubt to a jury that he is responsible for conspiring to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers. Defendant agrees that he is knowingly responsible for conspiring to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers and hereby waives any and all

right he has to have a jury determine drug type and weight beyond a reasonable doubt.

    7. Defendant understands that the penalties for the offenses to which he is pleading guilty include:

    a. Imprisonment for not more than life, a fine of up to $4,000,000, or both, and a term of supervised release of not less than five (5) years and up to life;

    b. A mandatory minimum term of imprisonment of ten (10) years. However, pursuant to the Special Information, filed on March 15, 2005, which alleges the Defendant's prior felony drug conviction from September 8, 1989, the mandatory minimum term of imprisonment doubles to twenty (20) years pursuant to Title 21, United States Code, Sections 841(b)(1)(A) and 851; and

    c. At the discretion of the Court, defendant may also be denied any or all federal benefits, as that term is defined in 21 USC §862, (a) for up to five years if this is defendant's first conviction of a federal or state offense consisting of the distribution of controlled substances, or (b) for up to ten years if this is defendant's second conviction of a federal or state offense consisting of the distribution of controlled substances. If this is defendant's third or more conviction of a federal or state offense consisting of the distribution of controlled substances, the defendant is

permanently ineligible for all federal benefits, as that term is defined in 21 USC §862(d);

   d. In addition, the Court must impose a $100 special assessment as to each count to which the Defendant is pleading guilty. Defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing. Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.

  8. Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which Defendant is pleading guilty:

  a. In December, 2004, defendant ERIC K. HO (hereinafter "HO") requested SEAN W. CARILLO (hereinafter "CARILLO") to assist him in obtaining pound quantities of methamphetamine from San Diego, California for HO to distribute on the island of Kauai.

  b. On or about January 2, 2005, CARILLO, accompanied by co-defendant ZULEIKA CARTER (hereinafter "CARTER") went to the Hawaiian Airlines ticket counter where CARTER

paid cash, provided to her by HO, in the amount of approximately $3000 for round trip airline tickets for CARTER and CARILLO to fly from Lihue, Kauai, Hawaii to Honolulu, Hawaii to Los Angeles, California to San Diego, California for the purpose of purchasing methamphetamine.

c. On or about January 2, 2005, defendants CARILLO and CARTER flew from Lihue, Kauai to San Diego, California.

d. On or about January 3, 2005, an individual arrived at a San Diego hotel with approximately one pound of methamphetamine which the individual exchanged for $12,000 in cash that HO had provided to CARTER for the purpose of purchasing methamphetamine.

e. On or about January 3, 2005, CARTER returned to the island of Kauai from San Diego via Los Angeles with approximately one pound of methamphetamine in her possession and delivered the drugs to HO after her arrival on Kauai.

f. On or about January 3, 2005, the individual referred to in paragraph (d) delivered approximately four (4) additional ounces of methamphetamine to CARILLO in San Diego, California.

g. On or about January 4, 2005, CARILLO flew from San Diego to Honolulu, Hawaii via Los Angeles with the

      approximately four (4) ounces of methamphetamine in his possession concealed within a pair of bicycle shorts he wore underneath his shorts.

h. CARILLO possessed the methamphetamine with the intent to deliver part of the drugs to HO and distribute the remainder within the District of Hawaii.

i. Laboratory analysis of the substance CARILLO possessed revealed it to be 89.5 grams of actual, or pure, methamphetamine (more specifically described in paragraph 10(b) of this Agreement, below).

j. On or about January 4, 2005 co-Defendants HO and CARTER arrived at the Lihue, Kauai airport to pick up CARILLO and the 4 ounces of methamphetamine he had brought from San Diego. Inside the vehicle in which they arrived, HO carried 193.7 grams of actual, or pure, methamphetamine (more specifically described in paragraph 10(b) of this Agreement, below). This methamphetamine was later thrown from the vehicle and recovered by Kauai police and was part of the approximately one pound of methamphetamine which CARTER had brought back from San Diego, California and delivered to HO for the purpose of distributing on the island of Kauai.

9. Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charges to which the Defendant is pleading guilty adequately reflect the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

10. Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of Defendant in connection with this matter:

 a. The parties stipulate to the facts as set forth in paragraph 8 of this agreement.

 b. The parties further agree that Defendant is responsible for the 89.5 grams of actual methamphetamine found in CARILLO's possession on January 4, 2005, the 193.7 grams of actual methamphetamine thrown from the vehicle in which HO and CARTER arrived in at the Lihue, Kauai airport as well as the remainder of the one pound of methamphetamine which CARTER and CARILLO purchased on behalf of HO in San Diego, California on January 3, 2005. The results of the laboratory analysis of the methamphetamine seized are as follows:

| DEA Ex.#: | Controlled Substance: | Net Wgt: | Purity: | Pure Wgt: |
|---|---|---|---|---|
| 1 | d-Methamphetamine Hydrochloride | 99.5 gm | 90% | 89.5 gm |

| 3 | d-Methamphetamine Hydrochloride | 215.3 gm. | 90% | 193.7 gm |
|---|---|---|---|---|

The foregoing chemical analysis was conducted by the DEA Southwest Laboratory. D-Methamphetamine Hydrochloride is a methamphetamine salt and a Schedule II controlled substance. The substance in DEA Exhibit 1 is "ice" as that term is defined in Note C to the Drug Quantity Table in Guidelines Section 2D1.1(c).

c. The parties further agree that the total weight of the pure methamphetamine, described above, and the remainder of the one pound of a mixture and substance containing a detectable amount of methamphetamine brought to Hawaii from San Diego, after conversion, places the Defendant at a base offense level of 34 under the Sentencing Guidelines.

d. The parties further agree that the Defendant was an organizer, leader, manager and supervisor in the conspiracy which is the basis of Count 1 of the First Superseding Indictment and, thus, a two-level upward departure pursuant to Guideline § 3B1.1(c) shall apply.

e. The United States Attorney agrees that Defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to Defendant. Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level

reduction in sentencing offense level pursuant to Guideline § 3E1.1(b)(2), if defendant is otherwise eligible.

The Defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the probation office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

11. The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.

12. The parties are presently unaware of any factual disputes affecting the sentencing of defendant herein.

13. The Defendant is aware that he has the right to appeal the sentence imposed under Title 18, United States Code, Section 3742(a). Defendant knowingly waives the right to appeal, except as indicated in subparagraph "b" below, any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined on any of the grounds set forth in Section 3742, or on any ground whatever, in

exchange for the concessions made by the prosecution in this plea agreement.

   a. The Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

   b. If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the Defendant, the Defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined under Section 3742 and to challenge that portion of his sentence in a collateral attack.

   c. The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

  14. The Defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines. The Defendant agrees that there is no promise or guarantee of the applicability or nonapplicability of

any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

15. The Defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary. The Defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charges adequately reflect the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

16. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. If Defendant persisted in a plea of not guilty to the charges against him he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. The Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the Defendant, the prosecution and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by

removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the Defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

   c. If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the Defendant's guilt beyond a reasonable doubt.

   d. At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the Defendant. Defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on his own behalf. If the witnesses for the Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

   e. At a trial, the Defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

   f. At a trial, Defendant would have a right to have the jury determine beyond a reasonable doubt the quantity and weight of the controlled substances charged in the indictment.

  17. Defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph. Defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

  18. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

  19. Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto. The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

  20. Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of Defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

21. The Defendant agrees that he will fully cooperate with the United States.

a. He agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving codefendants and others indicted later in the investigation, and related civil proceedings.

b. Defendant agrees to be available to speak with law enforcement officials and to representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but he understands he may have his counsel present at those conversations, if he so desires.

c. Defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crimes in this Indictment or any subsequent charges related to this investigation, at which the prosecution requests him to testify.

d. Pursuant to § 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under § 1B1.8(b) of the Sentencing Guidelines.

22. In the event that the Defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after Defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case in chief in the trial of the Defendant in this matter. Defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

23. Pursuant to Guideline Section 5K1.1 and Rule 35(b), Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the Defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense. Pursuant to Title 18, United States Code, Section 3553(e), the prosecution may also move the Court to impose a sentence below the level established by statute as a minimum sentence for Count 1 on the ground that Defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense. Defendant understands that:

   a. The decision as to whether to make such a request or motion is entirely up to the prosecution.

   b. This Agreement does not require the prosecution to make such a request or motion.

   c. This Agreement confers neither any right upon the Defendant to have the prosecution make such a request or motion, nor any remedy to Defendant in the event the prosecution fails to make such a request or motion.

   d. Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines or to impose a sentence below the minimum level established by statute.

   DATED: September 30, 2005, at Honolulu, Hawaii.


AGREED:


EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

ERIC K. HO
Defendant


FLORENCE T. NAKAKUNI
Chief, Narcotics Section

CRAIG KIMSEL, Esq.
Attorney for Defendant


MARK A. INCIONG
Assistant U.S. Attorney