1

1       IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF HAWAII

3

UNITED STATES OF AMERICA,     ) CR 05-00027 JMS
4                             )
                Plaintiff,    ) Honolulu, Hawaii
5                             ) September 30, 2005
        vs.                   ) 10:00 a.m.
6                             )
(02) ERIC K. HO,              ) Motion for Withdrawal of Not
7                             ) Guilty Plea and to Plead
                              ) Anew
8            Defendant.       )
                              )
9       _____

10                  TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE J. MICHAEL SEABRIGHT
11              UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   For the Plaintiffs:        MARK A. INCIONG, ESQ.
                                Office of the United States Attorney
14                              PJKK Federal Building
                                300 Ala Moana Blvd., Suite 6100
15                              Honolulu, Hawaii  96850

16   For the Defendant          CRAIG T. KIMSEL, ESQ.
     (02) Eric K. Ho:           888 Mililani Street, Suite 700
17                              Honolulu, Hawaii  96813

18   Official Court             Sharon Ross, CSR, RPR, CRR
     Reporter:                  United States District Court
19                              300 Ala Moana Blvd., Room C-283
                                Honolulu, Hawaii  96850
20                              (808) 535-9200

21

22

23

24

25   Proceedings recorded by machine shorthand, transcript produced
     with computer-aided transcription (CAT).

**EXHIBIT E**

1    FRIDAY, SEPTEMBER 30, 2005                    10:00 A.M.

2              COURTROOM MANAGER:  Criminal No. 05-00027 JMS, United

3    States of America versus Defendant (02), Eric K. Ho.

4              This case is called for hearing on a Motion For

10:04AM    5    Withdrawal of Not Guilty Plea and to Plead Anew.

6              MR. INCIONG:  Good morning, Your Honor.  Mark Inciong

7    for the United States.

8              THE COURT:  Good morning.

9              MR. KIMSEL:  And good morning, Your Honor.  Craig

10:04AM    10    Kimsel for Eric Ho.  He is present next to me in court.

11              THE COURT:  Thank you.  If you could approach with

12    your client --

13              MR. KIMSEL:  Thank you, Your Honor.

14              THE COURT:  -- Mr. Kimsel.

10:04AM    15              Mr. Ho, I understand that you've entered into a

16    written plea agreement with the government and you wish to

17    enter a plea of guilty today?

18              THE DEFENDANT:  Yes.

19              THE COURT:  Okay.  Now, before I can accept your

10:04AM    20    guilty plea, there are a number of questions I must ask you;

21    and I must do it primarily for two reasons.  One is to make

22    sure that your plea is voluntary and knowing and that you

23    understand what rights you're giving up; and secondly I need to

24    be convinced that you, in fact, did do the things which

10:05AM    25    constitute the crime charged in Count 1 of the first

1    superseding indictment.  Do you understand that?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  So, it's important that you understand

4    fully what I'm asking you before you answer the questions.  If

10:05AM  5    at any point in time you need to discuss a matter with your

6    attorney, you let me know; and I'll give you some time to do

7    that, okay?

8                    THE DEFENDANT:  Okay.

9                    THE COURT:  All right.  Could we swear the defendant?

10:05AM  10                    COURTROOM MANAGER:  Yes, Your Honor.

11              (The defendant was sworn to answer truthfully.)

12                    THE COURT:  Okay.  If we could have that --

13    Mr. Kimsel, that microphone in front of your client so the

14    record is clear here.

10:05AM  15                    MR. KIMSEL:  Oh, sure.

16                    THE COURT:  Thank you.  Do you understand you're now

17    under oath, Mr. Ho; and if you answer any questions falsely,

18    that those answers could be used against you in a prosecution

19    for perjury or giving a false statement?

10:05AM  20                    THE DEFENDANT:  Yes.

21                    THE COURT:  Can you give us your full legal name?

22                    THE DEFENDANT:  Eric Marcus Kaleo Ho.

23                    THE COURT:  And how old are you, Mr. Ho?

24                    THE DEFENDANT:  34.

10:06AM  25                    THE COURT:  And how far did you go in school?

```
1              THE DEFENDANT:  Twelfth.

2              THE COURT:  Did you graduate?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Where did you graduate from?

10:06AM   5              THE DEFENDANT:  Kamehameha.

6              THE COURT:  And obviously English is your first

7      language?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And you're able to read English?

10:06AM   10             THE DEFENDANT:  Yes.

11             THE COURT:  And did you -- were you able to read the

12     plea agreement in this case?

13             THE DEFENDANT:  Yes.

14             THE COURT:  And understand it?

10:06AM   15             THE DEFENDANT:  Yes.

16             THE COURT:  And you've read the first superseding

17     indictment in this case?

18             THE DEFENDANT:  Yes.

19             THE COURT:  And you were able to understand that?

10:06AM   20             THE DEFENDANT:  Yeah.

21             THE COURT:  Okay.  Have you had any employment in the

22     last few years?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Doing what?

10:06AM   25             THE DEFENDANT:  I worked for my grandpa at Don Ho
```

```
 1    Enterprise.
 2              THE COURT:  At what?
 3              THE DEFENDANT:  Don Ho Enterprise.
 4              THE COURT:  What is that?
 5              THE DEFENDANT:  He's an entertainer.  Don Ho, that's
 6    my grandfather.  I worked for him.
 7              THE COURT:  Oh, Don Ho is your grandfather?
 8              THE DEFENDANT:  Yeah.
 9              THE COURT:  Oh, okay.  So, you worked for your
10    grandfather?
11              THE DEFENDANT:  Yes.
12              THE COURT:  All right.  And have you had any drugs,
13    whether legal drugs or illegal drugs, or had any alcohol in the
14    last 24 hours?
15              THE DEFENDANT:  No.
16              THE COURT:  Is your mind clear?
17              THE DEFENDANT:  Yes.
18              THE COURT:  Do you understand what you're doing here
19    today?
20              THE DEFENDANT:  Yes.
21              THE COURT:  Can you tell me that?
22              THE DEFENDANT:  What I'm doing?
23              THE COURT:  Yeah.
24              THE DEFENDANT:  I'm pleading guilty to my charges.
25              THE COURT:  Okay.  Have you ever been treated for any
```

10:06AM (lines 5)
10:06AM (line 10)
10:06AM (line 15)
10:06AM (line 20)
10:07AM (line 25)

1    mental illness or addiction to any drugs?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Tell me about that.

4              THE DEFENDANT:  Salvation Army Treatment Center.

10:07AM    5              THE COURT:  Okay.  And when was that?

6              THE DEFENDANT:  2001, I think.

7              THE COURT:  All right.  Did you graduate from the

8    program?

9              THE DEFENDANT:  Yes.

10:07AM    10              THE COURT:  All right.  Are you under any sort of

11    withdrawal or any sort of symptoms related to your prior drug

12    abuse --

13              THE DEFENDANT:  No.

14              THE COURT:  -- here today?

10:07AM    15              THE DEFENDANT:  No.

16              THE COURT:  Okay.  Have you had enough time to talk to

17    Mr. Kimsel about your case?

18              THE DEFENDANT:  Yes.

19              THE COURT:  Are you satisfied with his services, that

10:07AM    20    is, his acting as your attorney?

21              THE DEFENDANT:  Yes.

22              THE COURT:  Now, has anyone made any promise or

23    assurance to you of any kind in an effort to get you to plead

24    guilty other than what's in the plea agreement?

10:07AM    25              THE DEFENDANT:  No.

1           THE COURT:  Has anyone threatened you or anyone else,

2     like a close family member or a friend, or forced you in any

3     way to enter a plea of guilty?

4           THE DEFENDANT:  No.

10:07AM     5           THE COURT:  Are you pleading guilty only because you

6     are guilty and that's what you yourself decided you want to do?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Mr. Kimsel, do you have any reason to

9     doubt your client's competence to enter a voluntary and knowing

10:08AM    10     plea today?

11           MR. KIMSEL:  No, I don't, Your Honor.

12           THE COURT:  All right.  Now, Mr. Ho, I want to go

13     through with you the charge contained against you in the first

14     superseding indictment that you intend to enter a plea of

10:08AM    15     guilty to.  Have you discussed that with your attorney?

16           THE DEFENDANT:  Yes.

17           THE COURT:  And you said already you've read it,

18     right?

19           THE DEFENDANT:  Yes.

10:08AM    20           THE COURT:  Okay.  Do you understand that it charges

21     that beginning on a date unknown, but continuing until

22     January 4th of 2005, you, Sean Carillo, C-A-R-I-L-L-O, and

23     Zuleika, Z-U-L-E-I-K-A, Carter knowingly and intentionally

24     conspired with each other and others to distribute 50 grams or

10:08AM    25     more of methamphetamine, its salts, isomers and salts of its

1    isomers, a Schedule II controlled substance?  Do you understand

2    that?

3           THE DEFENDANT:  Yes.

4           THE COURT:  And do you understand there are various

10:08AM    5    overt acts -- is what it's called legally, which just means

6    things that were done to support that conspiracy -- that are

7    charged in this first superseding indictment?

8           THE DEFENDANT:  Yes.

9           THE COURT:  And it charges, for instance, that on --

10:09AM    10    in December of 2004 you met with Sean Carillo on Kauai and

11    advised him that you wished to utilize him to buy pound

12    quantities of methamphetamine from San Diego.

13           Do you understand that?

14           THE DEFENDANT:  Yeah.

10:09AM    15           THE COURT:  And that in January of 2005 you gave

16    Mr. -- is it a Mr. or Ms. Carter?

17           THE DEFENDANT:  Ms.

18           THE COURT:  -- Ms. Carter approximately $16,000 in

19    United States currency in order to purchase methamphetamine

10:09AM    20    from San Diego?

21           THE DEFENDANT:  Yes.

22           THE COURT:  And that on January 2nd you and someone

23    else dropped off your two co-defendants at the Kauai airport?

24           THE DEFENDANT:  Yes.

10:09AM    25           THE COURT:  And that on January 3rd one pound of

1    methamphetamine was obtained in San Diego and then Mr. --

2    Ms. Carter returned to Kauai and met with you and provided you

3    with that methamphetamine?

4         THE DEFENDANT:  Yes.

10:10AM    5         THE COURT:  Okay.  And then Sean Carillo flew from San

6    Diego to Honolulu with four ounces of methamphetamine on

7    January 4th?

8         THE DEFENDANT:  Yeah.

9         THE COURT:  And that you arrived at the airport to

10:10AM   10    pick them up?

11         THE DEFENDANT:  Yes.

12         THE COURT:  All right.  Now, the maximum penalties for

13    this offense, as I understand it, is up to life imprisonment --

14    that's the maximum penalty -- a fine of up to $4 million or

10:10AM   15    both and a term of supervised release of not less than five

16    years and up to life.  Do you understand that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  And do you understand because a special

19    information was filed on March 15th of 2005 which alleges that

10:10AM   20    you had a prior felony drug conviction from September 8th of

21    1989, that a mandatory minimum imprisonment term of 20 years

22    would apply to your case?

23         THE DEFENDANT:  Yes.

24         THE COURT:  And that there's a $100 special

10:11AM   25    assessment?  Do you understand that?

```
 1              THE DEFENDANT:  Yes.

 2              THE COURT:  Do both counsel agree I've stated the

 3    penalties correctly?

 4              MR. INCIONG:  Yes, Your Honor.

 5              MR. KIMSEL:  The defense agrees, Judge.

 6              THE COURT:  Now, have you had a chance to read and

 7    discuss the plea agreement with Mr. Kimsel?

 8              THE DEFENDANT:  Yes.

 9              THE COURT:  And do you have the original of that plea

10    agreement, Mr. Kimsel, in front of you there?

11              MR. KIMSEL:  Yes, we do, Your Honor.

12              THE COURT:  Mr. Kimsel, if you could please ask your

13    client to identify his signature on that plea agreement and

14    identify your own signature.

15              MR. KIMSEL:  Yes, Your Honor.  I want to redirect your

16    attention to Page -- I believe it's 15 -- 16 of the original

17    plea agreement.  I'm showing you where it's -- it's designated

18    "Eric K. Ho."  Above that -- above that name is a signature.

19    Is that your signature?

20              THE DEFENDANT:  Yes.

21              MR. KIMSEL:  Did you sign it today?

22              THE DEFENDANT:  Yes.

23              MR. KIMSEL:  In my presence?

24              THE DEFENDANT:  Yes.

25              MR. KIMSEL:  And I also signed it today.
```

10:11AM (lines 5, 10, 15, 20, 25)

1          THE COURT:  Okay.  Thank you.

2          Now, does this plea agreement reflect the entire

3    agreement between you and the United States?

4          MR. KIMSEL:  Yes, it does, Your Honor.

10:12AM  5          THE COURT:  I'm sorry.  I'm talking to your client.

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand what I'm saying?

8    There's no other side agreements or anything of that sort?

9          THE DEFENDANT:  No.

10:12AM  10          THE COURT:  Okay.  Mr. Inciong, if you could please

11    put on the record the essential terms of the plea agreement.

12          MR. INCIONG:  Yes, Your Honor.  The defendant is

13    pleading guilty to Count 1 of the first superseding indictment

14    which charges him with conspiracy to distribute 50 grams or

10:12AM  15    more of methamphetamine.

16          The defendant acknowledges his responsibility for

17    conspiring to distribute that amount of methamphetamine and is

18    waiving his right to have the government prove beyond a

19    reasonable doubt to a jury both the drug type and weight beyond

10:12AM  20    a reasonable doubt.

21          The defendant, as indicated, understands the maximum

22    penalties that apply in this case based on the filing of the

23    superseding -- or, I'm sorry, the special information alleging

24    his prior felony conviction.

10:12AM  25          The defendant is stipulating to and acknowledging the

1    accuracy of the facts of this case set out in Paragraph 8 of

2    the plea agreement.  He also is acknowledging and stipulating

3    to the results of the drug analysis of the methamphetamine that

4    was seized in this case and analyzed by the DEA crime lab.

10:13AM    5        The defendant further acknowledges that he is

6    responsible for the 89.5 grams of actual methamphetamine found

7    in Defendant Carillo's possession and for the 193.7 grams of

8    methamphetamine -- actual methamphetamine thrown from the

9    vehicle in which he was traveling in the vicinity of the Lihue,

10:13AM    10    Kauai airport on January 4th of 2005.

11        The defendant further acknowledges that based on that

12    amount of methamphetamine, as well as the mixture and substance

13    containing a detectable amount of methamphetamine that was

14    obtained in San Diego by his co-conspirators, that he is placed

10:13AM    15    at a base offense level of 34 under the sentencing guidelines.

16        The defendant further agrees that he is -- was an

17    organizer, leader, manager or supervisor in this conspiracy and

18    that a two-level upward departure pursuant to guideline

19    Section 3B1.1(c) shall apply.

10:14AM    20        The plea agreement calls for and the United States

21    agrees that the defendant is entitled to a third point for

22    acceptance of responsibility based on his timely acceptance in

23    this plea.

24        The defendant is under the understanding that the plea

10:14AM    25    agreement is not -- will not be accepted by the Court until it

13

1    has had an opportunity to review the presentence report that

2    will be prepared in this matter and that the Court is not bound

3    by any stipulation entered into by the parties and the Court

4    will be the final determiner of any facts relevant to

10:14AM    5    sentencing in this matter.

6         Defendant agrees that ordinarily he would have a right

7    to appeal his sentence, but under this plea agreement he is

8    waiving his right to appeal except in two limited

9    circumstances:  First, unless the Court sentences the defendant

10:15AM    10    to a sentence above and beyond the guideline range that the

11    Court finds applicable, the defendant will only, in that

12    instance, be able to appeal and collaterally attack that

13    portion of the sentence above and beyond the applicable

14    guideline range.  Similarly, the defendant is preserving his

10:15AM    15    right to collaterally attack any claim for ineffective

16    assistance of counsel that he believes is -- is or may be

17    applicable in this case.  The prosecution will retain its right

18    to appeal the sentence in this matter.

19         The defendant also understands that the Court will

10:15AM    20    consider the provisions of the sentencing guidelines in

21    determining his sentence but that there is no promise or

22    guarantee as to the applicability or non-applicability of those

23    guidelines.

24         The defendant understands that by pleading guilty he

10:15AM    25    is surrendering certain rights, including all of those which

1   pertain to his right to a jury trial that he would ordinarily

2   have in this matter, including the -- his right to have the

3   jury determine the drug type and quantity beyond a reasonable

4   doubt.

10:16AM   5          Finally the defendant agrees that he will fully

6   cooperate with the United States and agrees to abide by all of

7   the terms and conditions of that cooperation as outlined in

8   Paragraphs 21, 22 and 23 of the plea agreement.

9          THE COURT:  Okay.  Let me go over some of that with

10:16AM   10  you.

11          Do you agree, Mr. Kimsel, those are the essential

12  terms of the plea agreement?

13          MR. KIMSEL:  Those are the essential terms, Your

14  Honor.  I would add that it's our understanding that entering

10:16AM   15  into this plea agreement is a prerequisite to cooperation by

16  Mr. Ho.

17          THE COURT:  Okay.  That's not in the plea agreement,

18  though.  I mean, that's just -- or are you referencing

19  something in the plea agreement?

10:16AM   20          MR. KIMSEL:  Yes, Your Honor.  I have to find it for

21  you.  Just a minute.

22          Your Honor, yeah, that's just an understanding we

23  have.

24          THE COURT:  Okay.  All right.  Mr. Ho, let me go

10:17AM   25  through some of this with you.  Do you understand that normally

15

1    you would have a right to have a jury determine the type of

2    drug involved in your case and the amount of drug involved, but

3    you're waiving that and agreeing -- or giving that up and

4    agreeing to the amount of drugs involved in this case?  Do you

10:17AM    5    understand that?

6            THE DEFENDANT:  Yes.

7            THE COURT:  And you're agreeing or stipulating that

8    you were an organizer, leader or manager which would result

9    in -- potentially result in a greater sentence under the

10:17AM    10   guidelines.  Do you understand that?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Now, let me ask a question, Mr. Inciong,

13   about Paragraph 10(c) on Page 8.  As I understand it, the

14   100 -- or the 215.3 grams that were recovered was part of the

10:18AM    15   overall one pound that was brought back from San Diego; is that

16   right?

17           MR. INCIONG:  Yes, Your Honor.  There was -- there was

18   an additional pound that was purchased by Defendant Carter.

19   She brought that back to Kauai.  Mr. Carillo then returned a

10:18AM    20   day or two later with an additional 4 ounces.

21           THE COURT:  Right.

22           MR. INCIONG:  So, the pure amount that we have is the

23   amount that was recovered on Mr. Carillo's person when he was

24   flying back into the islands.  We have an additional amount

10:18AM    25   that was discarded from the vehicle Mr. Ho and Ms. Carter were

1    traveling in, and then there's an additional amount that was

2    never recovered.

3         So, that's why we have a portion is pure because we

4    were able to actually seize and analyze that; and the other

10:19AM    5    portion, we weren't able to analyze.  We don't have a purity.

6         THE COURT:  Okay.  But --

7         MR. INCIONG:  We weren't able to seize --

8         THE COURT.  -- but that other portion -- that's what

9    my concern is.  That other portion was part of the one pound

10:19AM   10   that was delivered in San Diego?  Is that -- is that clear from

11   the case?

12        MR. INCIONG:  Yes.

13        THE COURT:  Okay.  I just want to make clear to the

14   parties that I don't know that the conclusion you have reached

10:19AM   15   among yourselves is the one probation will reach or I will

16   reach.  And I want to make that very clear that if you have one

17   pound of meth and essentially test part of it and it comes out

18   to a certainty purity, I'm not convinced the Court would be

19   prepared to accept that the rest of it isn't that same purity

10:19AM   20   for purposes of sentencing.

21        So -- and there may be case law on that and there may

22   not; but as I've read this, I just wanted to inform the parties

23   of that.

24        Now, Mr. Kimsel, do you understand what I'm saying

10:19AM   25   here?

|  | 1 | MR. KIMSEL:  Yes, I do, Your Honor. |

1          MR. KIMSEL:  Yes, I do, Your Honor.

2          THE COURT:  And that, as I understand it, would

3   increase the guidelines two levels higher.  Is that your

4   understanding, Mr. Inciong --

10:19AM   5          MR. KIMSEL:  Yes, it is.

6          MR. INCIONG:  Yes.

7          THE COURT:  -- Mr. Kimsel?

8          Do you want to talk to your client about that,

9   Mr. Kimsel?

10:19AM   10          And I'm not saying I won't accept that if that's

11   what's in the report.  I don't know what will be in the report.

12   I'm just pointing out something that is a stipulation between

13   the parties that the Court looks at and has some concern as to

14   how the Court may look at it later down the road.

10:20AM   15          MR. KIMSEL:  My client understands that the Court may

16   take a different view from the process contained in the plea

17   agreement between us and the United States and that the Court

18   is not necessarily a party to this plea agreement.

19          THE COURT:  Okay.

10:20AM   20          MR. KIMSEL:  And this plea agreement only extends

21   between the defendant and the United States.

22          THE COURT:  All right.  And I just want to make that

23   clear that I did see something here that did raise some concern

24   for me.  And I'm not suggesting how I'm going to rule

10:20AM   25   necessarily, but I did want to make sure the parties understood

1    that and had some notice that there was some issue relating to

2    that.

3              MR. INCIONG:  Yes, Your Honor.

4              MR. KIMSEL:  Can I have a moment, Your Honor?

10:20AM   5              THE COURT:  Yes.  Why don't you explain this to Mr. Ho

6    so that he -- I can discuss it with him?

7              (Mr. Kimsel and the defendant confer.)

8              THE COURT:  Mr. Kimsel, I think I would be more

9    comfortable if we took a recess.

10:22AM  10              MR. KIMSEL:  Perhaps so, Your Honor.

11              THE COURT:  And --

12              MR. KIMSEL:  This might take a little bit of time to

13   explain to Mr. Ho.  I didn't anticipate this question

14   (inaudible).

10:22AM  15              THE COURT:  That's fine.  I just wanted to put that on

16   the record.

17              What's people's schedules like?  I mean, do you want

18   to come back this afternoon or in 15 minutes or what do you

19   want to do.

10:22AM  20              MR. KIMSEL:  Maybe if we had until 11:00 o'clock we

21   could -- I could explain it to Mr. Ho a little bit and explain

22   to him how relevant conduct is separate, perhaps, from the plea

23   agreement in this case and that it always will be there.  It

24   may take --

10:23AM  25              (Mr. Kimsel and the defendant confer.)

1    THE COURT:  No, no.  I don't want to go forward until

2 I'm convinced that you've explained that to him and he

3 understands it.

4    MR. KIMSEL:  Why don't -- could we just pass this for

10:23AM 5 about five minutes, Your Honor, just so I can --

6    THE COURT:  Yes, yes.

7    MR. KIMSEL:  -- have some assurances that he really

8 does understand it?

9    THE COURT:  Yes, I'll just go off the bench.

10:23AM 10    Mr. Inciong, is your time okay?

11    MR. INCIONG:  Yes.

12    THE COURT:  I'll just go off the bench and then come

13 back on when you're ready.

14    MR. KIMSEL:  Thank you, Your Honor.

10:23AM 15    THE COURT:  Okay.  Thank you.

16    (Recess at 10:23 a.m., until 10:32 a.m.)

17    THE COURT:  Okay.  Mr. Kimsel, where do we stand?

18    MR. KIMSEL:  Yeah, Your Honor, I've had a chance to

19 review that provision of the plea agreement with Mr. Ho and

10:32AM 20 explain it in some detail to his satisfaction.  I believe we

21 really -- we're ready now to go forward with the --

22    THE COURT:  Okay.  So, Mr. Ho, let me just make sure

23 you understand this for the record.  This particular

24 agreement -- all the stipulations in the plea agreement are

10:32AM 25 agreements between you and the government only.  Do you

1    understand that?

2         THE DEFENDANT:  Yes.

3         THE COURT:  And I'm not bound by those.  Do you

4    understand that?

10:32AM    5         THE DEFENDANT:  Yes.

6         THE COURT:  Okay.  In this particular agreement what

7    it states is that you're agreeing to a base offense level of 34

8    under the sentencing guidelines.

9         What the Court had mentioned is that there may be an

10:32AM   10    issue as to the weight of the -- I'm sorry -- the purity of the

11    drugs that were not recovered which could increase the

12    guidelines by two more levels.  And the Court does have some

13    concern about that based on its review right now of what's in

14    the record.  And so, I just wanted to make sure you were aware

10:32AM   15    of that.  Do you understand that?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And even with that, you want to go forward

18    at this time?

19         THE DEFENDANT:  Yes.

10:33AM   20         THE COURT:  And you've had enough time to talk to

21    Mr. Kimsel about that?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Okay.  Do you also understand in the plea

24    agreement that normally you would have a right to appeal your

10:33AM   25    conviction or sentence to the Ninth Circuit Court of Appeals?

1    Do you understand that?

2             THE DEFENDANT:  Yes.

3             THE COURT:  And you also would have a right to bring

4    what's called a collateral attack against your sentence which

10:33AM    5    would be -- or your conviction which you would bring to me

6    first, and then after that it could go to the Ninth Circuit

7    Court of Appeals.  Do you understand that?

8             THE DEFENDANT:  Yes.

9             THE COURT:  And as to your right for appeal to the

10:33AM   10    Ninth Circuit, you're giving up any right to appeal except, if

11    the Court sentences you above the guideline range determined by

12    the Court, you could still appeal that portion of the sentence

13    greater than the guidelines called for.  Do you understand

14    that?

10:33AM   15             THE DEFENDANT:  Yes.

16             THE COURT:  And do you also understand that you're

17    giving up your right for a collateral attack, that is, coming

18    to me challenging the conviction or sentence, except in two

19    circumstances?  One is the same as your right to appeal.  That

10:34AM   20    is, if I were to sentence above the guideline range that I

21    determine, you could appeal that portion of the sentence.  Do

22    you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  And, also, you could challenge the

10:34AM   25    effectiveness of your attorney.  That is, if you were unhappy

1    with the performance of your attorney, then you could bring a

2    claim to me regarding that.  Do you understand?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Okay.  Now, you also understand that in

10:34AM    5    the cooperation agreement, that the cooperation agreement does

6    not require the government to file a motion for downward

7    departure; and even if it does, the Court is not required to

8    grant such a motion?

9            THE DEFENDANT:  Yes.

10:34AM    10            THE COURT:  And you also understand you can't force

11    the government to file that motion?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Do you understand that the Court is not

14    required to accept the plea agreement but that I may reject it

10:34AM    15    later?

16            THE DEFENDANT:  Yes.

17            THE COURT:  Now, I want to go over some important

18    rights with you, that is, rights you have under the

19    constitution and laws of the United States that you're giving

10:34AM    20    up by pleading guilty.

21            First, do you understand under the constitution and

22    laws of the United States that you would have a right to have

23    the charges set forth against you in the first superseding

24    indictment tried before a jury?

10:35AM    25            THE DEFENDANT:  Yes.

|  | 1 | THE COURT: And that at a trial you would be presumed |

THE COURT: And that at a trial you would be presumed
innocent and the government would have the burden of proving
your guilt beyond a reasonable doubt and you would not have to
present any evidence nor would you have to prove that you were
not guilty? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And at a trial you would have the right to
assistance of counsel, such as Mr. Kimsel, throughout that
process. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And you would have a right to see and hear
all of the government witnesses that would be brought into
court and that Mr. Kimsel could question all of those
government witnesses. It's called cross-examination. Do you
understand that?

THE DEFENDANT: Yes.

THE COURT: And you could object to evidence offered
by the government; and you could offer your own evidence,
whether it be documents of some sort or witnesses to testify.
And should you have a hard time getting witnesses to come to
court or getting the documents, you could use the Court's
subpoena power to essentially force that evidence to come into
court. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And if you went to trial, you would have a

1    constitutional right to testify on your own behalf.  Do you

2    understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  But you also would have a right not to

10:36AM  5    testify, and no inference or suggestion of guilt could be drawn

6    by the jury -- by the jury based on the fact you didn't

7    testify.  Do you understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And that by pleading guilty, if I accept

10:36AM  10   your plea, do you understand there will be no trial and you'll

11   give up all of the rights that we just discussed?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And, further, if you proceed today, you'll

14   have to give up your right not to incriminate yourself because

10:36AM  15   I will ask you what you did that constitutes the crime; and

16   that answer would tend to incriminate you in a crime,

17   obviously.  Do you understand that?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Now, Mr. Ho, I assume you're a United

10:36AM  20   States citizen?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Do you understand the offense to which

23   you're pleading guilty is a felony offense --

24             THE DEFENDANT:  Yes.

10:36AM  25             THE COURT:  -- and that if your plea is accepted and

1    you are found guilty of that offense, you could lose valuable

2    civil rights, such as the right to vote, the right to serve on

3    a jury, the right to hold public office and the right to

4    possess any firearm or ammunition?  Do you understand that?

10:37AM    5        THE DEFENDANT:  Yes.

6        THE COURT:  Do you have any pending state charges

7    against you at the present time?

8        MR. KIMSEL:  Yes, he does, Your Honor.

9        THE COURT:  Okay.  You understand that I'm not going

10:37AM    10    to be adjudging those state matters, Mr. Ho; and, also, you

11    need to make sure you understand that any sentence you receive,

12    if you do, from the State Court could run consecutive or in

13    addition to any sentence imposed here in Federal Court.  Do you

14    understand that?

10:37AM    15        THE DEFENDANT:  Yes.

16        THE COURT:  Now, the United States law establishes

17    detailed sentencing guidelines which specify sentences for

18    people convicted of federal crimes.  The Supreme Court has

19    recently said that federal judges must consider these

10:37AM    20    guidelines, but they're advisory only.

21        So, in addition to considering these guidelines, the

22    Court considers other factors set forth in a law which is

23    contained at 18 United States Code Section 3553(a).

24        Have you and your attorney had a chance to talk about

10:37AM    25    the sentencing guidelines and the other factors that play into

1    sentencing?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And do you understand that the Court will

4    not be able to determine the guidelines in your case until

10:38AM    5    after a presentence report has been prepared and you and the

6    government both have an opportunity to read that report and to

7    make any objections you may have to what's in that report?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Do you also understand that if -- after

10:38AM    10    the Court determines what guideline applies to your case, the

11    Court will still consider all the other factors set forth at

12    3553(a), that law that we talked about, and that I may impose a

13    sentence that is more severe or less severe than what's called

14    for by the guidelines?  Do you understand that?

10:38AM    15              THE DEFENDANT:  Yes.

16              THE COURT:  And if your sentence is worse or more

17    severe than you expected, you won't have a right to withdraw

18    your guilty plea.  Do you understand that?

19              THE DEFENDANT:  Yes.

10:38AM    20              THE COURT:  Do you also understand the government has

21    not waived or given up its right to appeal its sentence in this

22    case?

23              THE DEFENDANT:  Yes.

24              THE COURT:  Do you understand that based on your

10:38AM    25    guilty plea alone, the Courts could sentence you up to the

1    maximum penalty which in this case would be up to life

2    imprisonment?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Now, has anyone made any promise to you as

10:39AM    5    to what your sentence will be?

6            THE DEFENDANT:  No.

7            THE COURT:  Do you understand that if you were

8    sentenced to a term of imprisonment, a term of supervised

9    release would follow and that if you were found by a court to

10:39AM    10    have violated terms of supervised release, you could be sent

11    back to prison?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Do you also understand that in the federal

14    system parole has been abolished, so that if you are

10:39AM    15    incarcerated, you will not be released early on parole?  Do you

16    understand that?

17            THE DEFENDANT:  Yes.

18            THE COURT:  Mr. Inciong, is either restitution or

19    forfeiture applicable in this case?

10:39AM    20            MR. INCIONG:  No, there is not, Your Honor.

21            THE COURT:  Okay.  I'm going to turn next, Mr. Ho, to

22    the facts that relate to what you did so the court can be

23    assured that you did commit the crime with which you're

24    prepared to plead guilty.

10:39AM    25            So, at this time what I'm going to do is I'm going to

1    ask Mr. Inciong to do two things:  First, to tell us what the

2    elements are that he would have to prove under Count 1 of the

3    first superseding indictment and, second, to set forth the

4    facts the government is prepared to prove at trial.

10:40AM    5    MR. INCIONG:  Yes, Your Honor.  The elements at issue

6    for this charge would be as follows:  First, that there was an

7    agreement between two or more persons to commit a crime, in

8    this case, distribution of 50 grams or more of methamphetamine;

9    secondly, that the defendant became a member of the conspiracy

10:40AM    10    knowing of at least one of its objects and intending to help

11    accomplish it.  Additionally for sentencing purposes, the

12    government would be required to prove beyond a reasonable doubt

13    that the quantity of actual methamphetamine was 50 grams or

14    more.

10:40AM    15    To prove those elements, the United States would put

16    forth the following evidence at trial:  That in December of

17    2004, Mr. Ho, along with Co-Defendant Sean Carillo, met in the

18    Island of Kauai and spoke in regard to Mr. Carillo obtaining

19    pound quantities of methamphetamine from San Diego, California,

10:40AM    20    for Mr. Ho for distribution on the Island of Kauai.

21    On or about January 2nd of 2005, Mr. Carillo,

22    accompanied by Co-Defendant Zuleika Carter, went to the

23    Hawaiian Airlines ticket counter at the Lihue, Kauai airport

24    and paid cash -- which was provided to her by Mr. Ho -- of

10:41AM    25    approximately $3,000 for round-trip airline tickets for

1    Ms. Carter and Mr. Carillo to fly from Lihue to Honolulu and

2    then on to Los Angeles and then finally to San Diego,

3    California, for the purpose of purchasing methamphetamine.  On

4    January 2nd of 2005 Defendants Carillo and Carter did actually

10:41AM    5    make that flight and arrived in San Diego.

6         On January 3rd of 2005 an individual arrived at a San

7    Diego hotel and met with Carter and Carillo.  The individual

8    brought with him -- brought with her approximately one pound of

9    methamphetamine which she exchanged for $12,000 in cash that Ho

10:41AM    10    had provided to Carter.

11         On or about January 3rd of 2005, Ms. Carter then

12    returned to Kauai from San Diego via Los Angeles with the

13    approximately one pound of methamphetamine in her possession;

14    and she delivered those drugs to Mr. Ho after she arrived on

10:42AM    15    Kauai.

16         On or about January 3rd of 2005, the same individual

17    referred to in -- as the one coming to the hotel room in San

18    Diego delivered approximately 4 additional ounces of

19    methamphetamine to Mr. Carillo, again, in San Diego,

10:42AM    20    California.

21         On or about January 4th of 2005, Mr. Carillo then flew

22    back from San Diego to Kauai with the approximately 4 ounces of

23    methamphetamine in his possession.  And those drugs were

24    concealed within a pair of bicycle shorts he wore underneath

10:42AM    25    another pair of shorts.

1          Mr. Carillo possessed that methamphetamine with the

2     intent to deliver at least part of the drugs to Mr. Ho for

3     further distribution within the District of Hawaii.

4          Laboratory analysis of the drugs that were found on

10:42AM    5     Mr. Carillo's possession revealed it to contain 89.5 grams of

6     actual or pure methamphetamine.

7          On or about January 4th of 2005, Co-Defendants

8     Carter -- Co-Defendant Carter, along with Mr. Ho, arrived at

9     the Lihue, Kauai airport to pick up Mr. Carillo and the 4

10:43AM    10     ounces of methamphetamine he had brought back from San Diego.

11          Inside the vehicle in which they arrived, Mr. Ho

12     possessed approximately 193.7 grams of pure methamphetamine.

13     This methamphetamine was later thrown from the vehicle and

14     recovered by Kauai police and was part of the approximately one

10:43AM    15     pound of methamphetamine which Carter had originally brought

16     back from San Diego, California, and delivered Ho -- delivered

17     to Ho for the purpose of distributing on Kauai.

18          Those are the facts that the government would provide

19     at trial, along with the laboratory results from the DEA crime

10:43AM    20     lab and their conclusions as to the purity and amount of

21     methamphetamine.

22          THE COURT:  Okay.  Mr. Ho, did you understand what

23     Mr. Inciong just said?

24          THE DEFENDANT:  Yes.

10:43AM    25          THE COURT:  Do you agree with each and every fact that

1    he just set forth?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  Okay.  Let me ask you some specific

4    questions.  In around approximately December of 2004, did you

10:44AM    5    request Sean Carillo to go to San Diego to do something?

6                    THE DEFENDANT:  Yes.

7                    THE COURT:  What did you want him to do?

8                    THE DEFENDANT:  Pick up some meth for me.

9                    THE COURT:  Okay.  And bring it back to Kauai?

10:44AM    10                   THE DEFENDANT:  Yeah.

11                   THE COURT:  And did you then, in early January of

12    2005, accompany Ms. Carter to the airport where you provided

13    some cash for a trip to Southern California?

14                   THE DEFENDANT:  Yes.

10:44AM    15                   THE COURT:  And was there an expectation that Mr. --

16    I'm sorry.  Did Sean Carillo then also fly to Southern

17    California?

18                   THE DEFENDANT:  Yes.

19                   THE COURT:  And did you understand that both of them

10:44AM    20    would be picking up methamphetamine --

21                   THE DEFENDANT:  Yes.

22                   THE COURT:  -- to bring back to you from Southern

23    California?

24                   THE DEFENDANT:  Yes.

10:44AM    25                   THE COURT:  And, in fact, when Ms. Carter returned to

1    Kauai, did she then provide you with any drugs?

2              THE DEFENDANT:  Yes.

3              THE COURT:  What did she provide you with?

4              THE DEFENDANT:  15 ounces.

10:45AM    5              THE COURT:  15 ounces of methamphetamine?

6              THE DEFENDANT:  Yeah.

7              THE COURT:  Okay.  And what did you do with that

8    methamphetamine?

9              THE DEFENDANT:  I guess I had -- I must have had it on

10:45AM   10   me at the time we got -- I got rid of some, sold some.

11             THE COURT:  Okay.

12             THE DEFENDANT:  And the rest, I had on me.

13             THE COURT:  Okay.  So, the purpose of you getting the

14   drugs was so you could sell it?

10:45AM   15             THE DEFENDANT:  Yes.

16             THE COURT:  And you also went to the airport to pick

17   up Sean Carillo on or around January 4th with the intent to get

18   drugs that he had picked up in San Diego?

19             THE DEFENDANT:  That was his drugs, but yeah -- that

10:45AM   20   was his.

21             THE COURT:  Okay.  What was your -- what was your

22   arrangement with those drugs?

23             THE DEFENDANT:  No, I had nothing to do with those

24   drugs.  I was just picking him up because he was -- he asked me

10:46AM   25   to pick him up.

|   |   |   |
|---|---|---|
| | 1 | (Mr. Kimsel and the defendant confer.) |
| | 2 | THE DEFENDANT:  Yeah, that was his cut for doing the |
| | 3 | trip for me. |
| | 4 | THE COURT:  Oh, okay.  So, it was part of the overall |
| 10:46AM | 5 | deal between yourself and Ms. Carter and him? |
| | 6 | THE DEFENDANT:  Yeah. |
| | 7 | THE COURT:  Okay.  Mr. Inciong, are you satisfied? |
| | 8 | MR. INCIONG:  I am, Your Honor.  Thank you. |
| | 9 | THE COURT:  Mr. Kimsel, are you satisfied with that? |
| 10:46AM | 10 | MR. KIMSEL:  Yes, Your Honor. |
| | 11 | THE COURT:  Okay.  As to Count 1 of the first |
| | 12 | superseding indictment, how do you plead, guilty or not guilty, |
| | 13 | Mr. Ho? |
| | 14 | THE DEFENDANT:  Guilty. |
| 10:46AM | 15 | THE COURT:  It is the finding of the Court that the |
| | 16 | defendant is competent to understand the proceedings and to |
| | 17 | enter a knowing and informed plea, that he understands the |
| | 18 | charge to which he is pleading guilty, that he is entering a |
| | 19 | knowing and voluntary plea and is not entering the plea because |
| 10:46AM | 20 | of any force or threat, that the plea of guilty is supported by |
| | 21 | an independent basis in fact containing each of the essential |
| | 22 | elements of the offense, that he knows all of the rights |
| | 23 | associated with the trial and that he understands the |
| | 24 | sentencing guidelines and the other factors the Court must |
| 10:46AM | 25 | consider at sentencing and the maximum possible punishment. |

1          Based on that and as you have acknowledged that you

2     are guilty, Mr. Ho, I accept your guilty plea; and you are now

3     adjudged guilty of that offense.

4          The Court at this time files the plea agreement but

10:47AM   5     does reserve a determination as to whether to accept the plea

6     agreement until a presentence investigation report has been

7     prepared, and that would be at sentencing.

8          Now, I am referring you to the U.S. Probation Office

9     for the preparation of a presentence investigation report.  I

10:47AM   10    do urge you to cooperate fully and to let you know that you can

11    have Mr. Kimsel present with you as you need through that

12    process, and he can help explain to you how that process will

13    work.

14          Any other matters?

10:47AM   15    COURTROOM MANAGER:  Your Honor, sentencing date.

16          THE COURT:  Sentencing date, yes.

17          COURTROOM MANAGER:  Monday, February 6th, 2006, at

18    1:30.

19          THE COURT:  Is that okay with everybody?

10:47AM   20    MR. KIMSEL:  Yes, Your Honor.

21          MR. INCIONG:  That's fine, Your Honor.

22          THE COURT:  Okay.  Anything else?

23          MR. KIMSEL:  Your Honor, just one quick note.  The --

24    where I was stating earlier that the plea agreement was a

10:47AM   25    prerequisite to the -- to cooperation, it's actually in the

1    cooperation agreement that states that he must enter into this

2    plea agreement.

3            THE COURT:  Okay.  So, that was an earlier stand-alone

4    agreement with the government regarding his cooperation?

10:48AM    5            MR. KIMSEL:  That's correct.

6            THE COURT:  Okay.  Anything further?

7            MR. KIMSEL:  No.

8            THE COURT:  Okay.  We're in recess.  Thank you.

9            MR. INCIONG:  Thank you, Your Honor.

10           (Proceedings concluded at 10:48 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    COURT REPORTER'S CERTIFICATE

2            I, Sharon Ross, Official Court Reporter, United

3    States District Court, District of Hawaii, do herby certify

4    that the foregoing is a correct transcript from the record of

5    proceedings in the above-entitled matter.

6            DATED at Honolulu, Hawaii, August 2, 2006.

7

8                              /s/Sharon Ross

9                              SHARON ROSS

10                             CSR 432, RPR, CRR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25